IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROY GAL,<br><br>              Plaintiff,<br><br>     vs.<br><br>COUNTY OF KAUAI; CLAYTON SILVA JR., individually, and DOE DEFENDANTS,<br><br>              Defendants. | Civ. No. 20-00011 JMS-WRP<br><br>ORDER GRANTING DEFENDANT COUNTY OF KAUAI'S MOTION TO DISMISS COUNT I, WITH LEAVE TO AMEND, ECF NO. 22 |

## ORDER GRANTING DEFENDANT COUNTY OF KAUAI'S MOTION TO DISMISS COUNT I, WITH LEAVE TO AMEND, ECF NO. 22

## I.  INTRODUCTION

Plaintiff Roy Gal ("Plaintiff" or "Gal") initiated this lawsuit stemming

from an altercation with Defendant Clayton Silva Jr. ("Silva"), a police officer

with the Kauai Police Department ("KPD").  Before the court is Defendant County

of Kauai's ("the County") Motion to Dismiss, arguing that Plaintiff failed to allege

specific facts to state a 42 U.S.C. § 1983 claim of municipal liability.  ECF No. 22.

For the foregoing reasons, the court GRANTS the County's Motion to Dismiss,

with leave to amend.

## II.  BACKGROUND

### A.   Factual Background[1]

Plaintiff is a farmer on Kauai.  ECF No. 20 at PageID #91.  He has a

farm that is zoned for agricultural land.  *Id.*  The property had "serious issues with

feral pigs eating the crops and eating the baby goats and sheep."  *Id.*  Accordingly,

Plaintiff obtained a permit to eradicate the feral pigs (presumably, by hunting them

with firearms).  *Id.*  On January 30, 2018, Plaintiff "stayed up and waited to see if

there were any pigs threatening his herds" on his property.  *Id.*  When a group of

pigs arrived, Plaintiff fired his rifle two times, and then fired his handgun eight

times.  *Id.* at PageID #91-92.

Approximately ten minutes later, KPD officers entered Plaintiff's

property.  *Id.* at PageID #92.  Plaintiff believed they would confirm he shot the

rounds, check his paperwork, and leave.  *Id.*  Because Plaintiff carries his handgun

on him at all times while on his private property, when asked by the officers

whether he had a gun on him, Plaintiff responded "[a]lways."  *Id.*  At that point,

"without any warning or instructions," Plaintiff "was immediately taken down to

the ground."  *Id.* at PageID #93.  Plaintiff "was neither verbally or physically

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

hostile, aggressive[,] nor did he ever resist" when he was being handcuffed by the police officers. *Id.*

While Plaintiff was on the ground and handcuffed, Silva started talking to him. *Id.* Silva "aggressively" stood Plaintiff up from the ground, and "forcefully walked him" to just outside Plaintiff's gate. *Id.* Silva then walked Plaintiff backwards two steps and "purposely tripped [Gal] with his left foot, forcefully pushing [] Gal to the ground." *Id.* at PageID #94. Because Plaintiff was handcuffed, he had no ability to break his fall and he hit the ground, where he "felt a sharp terrible burning feeling in his lower back area, as well as his lower left rib cage area and neck." *Id.*

The KPD officers proceeded to check and verify Plaintiff's permits, uncuffed him, returned his belongings and said good night. *Id.* This took approximately an hour. *Id.*

**B.   Procedural Background**

On January 7, 2020, Plaintiff filed his original complaint, alleging four claims pursuant to § 1983 along with various state claims against KPD, Silva in his individual capacity, and Doe Defendants (collectively, "Defendants"). ECF No. 1. On April 8, 2020, the court approved the parties' stipulation for Plaintiff to amend his complaint, pursuant to the Local Rule 7.8 pre-filing conference concerning Defendants' proposed partial motion to dismiss. *See* ECF No. 19.

On May 6, 2020, Plaintiff filed the operative First Amended Complaint ("FAC"). ECF No. 20. In the FAC, Plaintiff alleges against both Defendants,[2] one count of excessive force in violation of the Fourth Amendment pursuant to § 1983 (Count I), *see id.* at PageID #97-98, and four state law claims (Counts II-V), *id.* at PageID #98-100.

On May 19, 2020, the County filed the instant Motion to Dismiss, seeking to dismiss Count I against it, arguing that Plaintiff fails to state a claim of municipal liability. ECF No. 22. On June 29, 2020, Plaintiff filed his Opposition. ECF No. 25. On July 1, 2020, Silva filed a statement of no opposition to the County's Motion to Dismiss. ECF No. 26. On July 2, 2020, the County filed its Reply. ECF No. 27. The court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.1(c). ECF No. 28.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital*

---

[2] In the FAC, Plaintiff amends his complaint and names the County as a Defendant, instead of KPD who was originally named. "This Court treats claims against municipalities . . . and their respective police departments as claims against the municipalities." *Hoe v. City & Cty. of Honolulu*, 2007 WL 1118288, at *5 (D. Haw. Apr. 12, 2007) (citing authority for the same proposition).

*Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

## IV.  **DISCUSSION**

"A municipality may be held liable as a 'person' under 42 U.S.C. § 1983 when it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights." *Hyun Ju Park v. City & Cty. of Honolulu*,

952 F.3d 1136, 1141 (9th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City*

*of N.Y.*, 436 U.S. 658, 694 (1978)).  Thus, Plaintiff's § 1983 claim against the

County can only stand if he alleges a "policy or custom" of the County that led to a

violation of federal law.  And "[t]o state such a [*Monell*] claim, a plaintiff must

allege either that (1) 'a particular municipal action *itself* violates federal law, or

directs an employee to do so'; or (2) the municipality, through inaction, failed to

implement adequate policies or procedures to safeguard its community members'

federally protected rights."  *Id.* (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*,

520 U.S. 397, 404, 407-08 (1997) (other citation omitted)).  Moreover, if "a

plaintiff pursues liability based on a failure to act, she must allege that the

municipality exhibited deliberate indifference to the violation of her federally

protected rights."  *Id.* (citing *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th

Cir. 2012)).

## A.    The Allegations in the FAC Against the County

As to the County, Plaintiff's FAC contains the following allegations:

50.  Mr. GAL is aware the [KPD] has a long history of its
officers and agents using excessive force on detainees
and criminal suspects.

51.  This long history of [KPD] of condoning its officers
and agents use of excessive force on detainees and
criminal suspects is reflected in the numerous lawsuits
filed against KPD's officers for excessive force used
against suspects and detainees.

52.  Upon information and believe (sic), [KPD] has a long standing (sic) policy or practice of allowing its officers and agents to abuse their authority over suspects and detainees.

53.  not rectified its long history of its officers and agents using excessive force on detainees and criminal suspects.

54.  Upon information and believe (sic), [KPD] has not rectified its long history of its officers and agents using excessive force on detainees and criminal suspects.

55.  Upon information and believe (sic), [KPD] has and continues to condone and allow its officers and agents to use excessive force on detainees and criminal suspects.

56.  Upon information and believe (sic), [KPD] has an official practice of condoning its officers and agents use excessive force on detainees and criminal suspects.

57.  Upon information and believe (sic), [KPD] has a longstanding practice or custom of condoning its officers and agents use of excessive force on detainees and criminal suspects.

58.  [KPD] failed to establish, enforce, direct, supervise, and control fair and reasonable policies, customs, practices, usages, and procedures to be used by a) their law enforcement agents; b) personnel responsible for processing and administering accusations of alleged misconduct; and 3) deputies, so that their edicts and/or acts represent the official policy of KPD.

59.  Instead, acting within such duty, KPD officials and agents, by the various acts of omission and commission cited herein fostered and encouraged an atmosphere of lawlessness, custom, practice of corruption, as well as, aggressive, abusive and assaultive behaviour (sic) and

> procedures toward MR. GAL which from the period of
> MR. GAL's detention and onward, represented the
> policy, practice, custom and procedure of KPD.
>
> 60.  KPD's accusation, suspension, detention, unlawful
> search and seizure of MR. GAL was in furtherance of the
> unlawful practice, custom and procedure of the KPD.
>
> 61.  KPD failed to adequately train its officers including
> [Silva] and this inadequate training resulted in the
> violation of Mr. GAL's constitutional rights.

*Id.* at PageID #95-97; *see also* Def.'s Mot., ECF No. ECF No. 22-1 at PageID

#126-127 (identifying the same allegations as the only relevant allegations against

the County); *see also* Pl.'s Opp'n, ECF No. 25 at PageID #143 (same, noting that

his FAC at paragraphs 50 through 61, allege a "longstanding custom of allowing

and thereby condoning the use of excessive force by its officers").

**B.      Plaintiff's Allegations Against the County are Conclusory and Plaintiff
         Has Not Alleged Facts to State a Claim of § 1983 *Monell* Liability**

         The County argues that the allegations against it are conclusory and

formulaic, and do not adequately allege facts to assert a claim of *Monell*

municipality liability against it.  The court agrees.  At most, Plaintiff identifies *a*

*singular* factual assertion which he argues is sufficient to state a claim of *Monell*

liability.  That is, Plaintiff argues that his allegation that "numerous

lawsuits . . . for the excessive use of force by [KPD] officers" reflect a

"longstanding custom of allowing and thereby condoning the use of excessive

force by its officers." Pl.'s Opp'n, ECF No.25 at PageID #143. These "numerous

lawsuits" are also evidence of KPD's failure to "adequately train[] its officers in

the proper use of force." *Id.* at PageID #145. This singular fact, however, is

insufficient to state a claim of *Monell* liability.

Plaintiff has not identified or articulated any *specific* custom or policy

by the County that resulted in the alleged excessive force incurred by Plaintiff. *See*

*Flores v. City & Cty. of Honolulu*, 2019 WL 5848058, at *3 (D. Haw. Nov. 7,

2019) (plaintiff failed to "point[] to an express City policy or custom" and

"references only one incident involving the use of excessive force: [his own]");

*Nakakura v. City & Cty. of Honolulu*, 2020 WL 1963786, at *3 (D. Haw. Apr. 23,

2020) (plaintiff failed to "identify a specific policy or custom or allege how the

same caused an officer to violate a constitutional right"); *Raquinio v. City of*

*Kailua Kona*, 2019 WL 1300069, at *5 (D. Haw. Mar. 21, 2019) (allegations that

policies of (1) "exhibiting deliberate indifference," (2) "failing to exercise

reasonable care in hiring its police officers" and (3) "inadequately supervising and

training its police officers" are "vague, conclusory[,]" and "void of any facts" to

state a claim of *Monell* liability).

Alleging "[e]xcessive force" itself, without more, is merely a legal

conclusion. It thus follows that alleging "numerous lawsuits" of "excessive force"

is also conclusory—many different and various acts may constitute excessive

force, and any customs or policies encouraging such acts could similarly be wide-ranging.  Stated differently, alleging "numerous lawsuits" for "excessive force" is meaningless if Plaintiff does not identify a specific custom or policy, and/or identify "numerous lawsuits" with a *similar use* of alleged excessive force exhibited in those lawsuits to give rise to a reasonable inference of a specific custom or policy.  *Compare with Garcia v. City & Cty. of Honolulu*, 2019 WL 1982517, at *14 (D. Haw. May 3, 2019) (finding sufficient Plaintiff's theory that "Honolulu's alleged custom of mishandling domestic abuse complaints filed against [Honolulu Police Department] officers" along with "numerous allegations spanning a ten-year period . . . g[a]ve rise to a reasonable inference that . . . such a practice or custom exist[ed].".  Accordingly, Plaintiff's allegations against the County fail because he has not alleged a specific deficient custom or policy that led to the allegedly excessive force he encountered.

Similarly, Plaintiff's allegation that these "numerous lawsuits" are evidence of KPD's failure to "train its officers in the proper use of force" fails for the same reasons.  He fails to identify a specific policy, and any deficiency in training officers of a policy.  *See Flores*, 2019 WL 5848058, at *4 (plaintiff failed to "identif[y] any particular deficiency in the City's training of its officers" and only "allege[d] in conclusory fashion that the City failed to train Officer Kirito" without any allegations as to the training program); *Costales v. City & Cty. of*

*Honolulu*, 2012 WL 4863786, at *5 (D. Haw. Oct. 12, 2012) (finding allegations

that defendant county failed to "[a]ppoint, promote, train, and supervise,"

"promulgate procedures and policies for the use of force that were consistent

with . . . the [United States] Constitution," and "permit[ted] the policy and custom

of using unreasonable force to exist and to be followed by the Honolulu Police

Department" were conclusory and "insufficient to establish a plausible basis for

holding the County liable").

Therefore, and because amendment does not appear futile, Plaintiff's

§ 1983 claim of excessive force against the County (Count I) is DISMISSED, with

leave to amend.

## V. **CONCLUSION**

For the foregoing reasons, the court GRANTS the County's Motion to

Dismiss as to Count I with leave to amend. If Plaintiff chooses to do so, his

Second Amended Complaint is due no later than July 31, 2020.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 10, 2020.



   /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Gal v. Cty. of Kauai, et al*, Civ. No. 20-00011 JMS-WRP, Order Granting Defendant County of
Kauai's Motion to Dismiss Count I, With Leave to Amend, ECF No. 22